### Ex parte WILLIAM BRUNER.

No. A-4410.   Opinion Filed Dec. 26, 1922.
(210 Pac. 1041.)

Habeas corpus by William Bruner, charged with murder, to be admitted to bail. Bail allowed.

Hill & Billingsley, for petitioner.

The Attorney General and N. W. Gore, Asst. Atty. Gen., for respondent.

PER CURIAM. In this proceeding the petitioner, William Bruner, filed in this court on the 15th day of July, 1922, his duly verified petition, alleging that he is unlawfully imprisoned and restrained of his liberty by C. H. Brown, sheriff of Seminole county; that the cause of his said restraint is that on the 15th day of April, 1922, upon his preliminary examina-

tion on a complaint charging that in said county on the 9th day of April, 1922, he did kill and murder one Ben Hardin, by shooting him with a pistol, and was held to answer to the district court without bail; that heretofore, on the 6th day of June, he made application to the Hon. John L. Coffman, district judge, for bail on said charge, and said application was denied; that he is not guilty of the crime of murder as charged in said information; that upon the evidence introduced on said preliminary examination and before said district judge it is shown that the proof of his guilt of the crime of murder is not evident nor the presumption thereof great.

Attached to said petition and made a part thereof is a transcript of the testimony taken on the preliminary examination and before the district judge.

As a witness for the state, Hampsey Roberts testified:

"I am a Seminole fullblood. Last Sunday morning I went over to Ben Hardin's and found him on the road looking for a gun which he said he had lost there. He asked me to go with him to Bill Bruner's place, and we went on from there. Bill was at home, and he and Ben went out behind the corncrib; I returned to the house, and shortly after I heard the report of a gun. I ran out and then I heard two or three other shots fired. I went on straight to my home."

In his own behalf petitioner states:

"I am a married man; I live in Seminole county, one-half mile from Ben Hardin's place in Okfuskee county. He had recently been convicted of violating the liquor laws, and served time in the Okfuskee county jail; about a month before he told me he wanted to make whisky at my place, because it was in Seminole county and the Okfuskee county law could not get him; that if I would not let him I would have to get out and leave there. I had seen him carrying a pistol on numerous occasions, and I was afraid I would have trouble with him so I went and consulted a lawyer, Mr. Hill at Wewoka, and he

told me to see the sheriff. I then went to the sheriff's office and talked with Mr. Lester, undersheriff. This was about a week before the homicide. I told him all about it. Two or three days before the fatal difficulty Ben Hardin came to me and told me that he would give me until Sunday to get out or come to his terms. On Saturday I went to Wewoka, a distance of about 14 miles, and returned to my home early Sunday morning, April 9th. I was at home but a short time when Ben Hardin and Hampsey Roberts came to my house. They were intoxicated. A few words were spoken in the house, then Ben asked me to come out and talk about a matter. We went out back of the corncrib and talked a few minutes. Ben told me that he had a shooting scrape last night with somebody sneaking around after his 'chock,' then he said, 'Have you decided to let me make whisky here?' I said, 'No,' and I told him that I had talked to the officers and that I would turn him in if he did. He cursed and said I would not do it; I went to a trough in the lot and threw out the cobs and started to the door in the crib. He said, 'You God damn white-livered son-of-a-bitch, you will turn me in, will you?' I said, 'Yes.' He said, 'I will kill you,' and he put his hand to his hip pocket quick; I thought he was going to shoot me; I jerked my gun and shot at him three times as fast as I could shoot. I went to the house and told my niece I had shot Ben, and then came to Wewoka and gave myself up.''

Following the hearing on the 18th day of July, 1922, and, upon a consideration of the testimony, it was adjudged that petitioner is entitled to be admitted to bail, and it was ordered that said petitioner be admitted to bail in the sum of $15,000, bond to be conditioned as required by law, said bond to be approved by the court clerk of Seminole county.